```
            IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
HARSHAD KUMAR A. PATEL,
et al.,                           *

     Petitioners,                 *

v.                                *       CIVIL NO.: WDQ-06-2169

RICHARD C. CATERISANO,            *
District Director of Services
(Maryland), U.S. Citizenship      *
and Immigration Services,
                                  *
     Respondent.
                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Petitioners Harshad Kumar A. Patel ("Harshad Kumar Patel") and Mamta Patel, husband and wife (the "Patels"), appeal the denial of their applications for naturalization as citizens of the United States by Respondent Richard C. Caterisano, the Maryland District Director of the Department of Homeland Security's Bureau of Citizenship and Immigration Services (the "CIS"). Pending is the CIS's motion to dismiss or, in the alternative, for summary judgment. For the reasons stated below, the motion will be denied.

I. Background

The Patels allege that they have been residents of Maryland for over five years and currently live together at 2210 Montauk

1

Drive, Crofton, Maryland 21114.  Compl. ¶ 1.

On March 24, 1999, the U.S. Immigration and Naturalization Service (the "INS")[1] granted lawful permanent resident status to the Patels, based on an INS-approved alien worker petition (Form I-140) filed on Harshad Kumar Patel's behalf by a Maryland Dunkin' Donuts franchise owned by Jay Patel, who is unrelated to the Patels.  *Id*. ¶ 7.

On February 9, 2004, the Patels each filed an application for naturalization ("Form N-400") with the CIS, and appeared for naturalization interviews on August 4, 2004.  *Id*. ¶ 9.

On April 14, 2005, the CIS denied Harshad Kumar Patel's application after concluding that he had given false testimony during his naturalization interview and had not been legally admitted into the United States for permanent residence.  *Id*. ¶ 13, Ex. B at 1-2.  On April 28, the CIS denied Mamta Patel's application after concluding her status was derivative of that of her spouse.  *Id*. ¶ 14, Ex. C at 1-2.

In May 2005, the Patels requested hearings with the CIS to contest the service's reasons for denying their applications;[2] they presented evidence in support of their arguments during a

---

[1] The INS was abolished on March 1, 2003, and its functions assumed by the Department of Homeland Security.  68 F.R. 10922.

[2] "If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."  8 U.S.C. § 1447(a).

2

joint hearing with a CIS agent on August 16, 2005.  *Id*. ¶¶ 15-16.

On April 24, 2006, the Patels' administrative remedies were exhausted when the CIS reaffirmed its adverse determinations and denied their appeals.  *Id*. ¶ 17.

On August 21, the Patels filed their petition with this Court to review the CIS's denials and grant their naturalization applications.

The CIS moves for dismissal of the Patels' petition or, in the alternative, for summary judgment, arguing that it properly denied the Patels' applications because: (1) Harshad Kumar Patel failed to establish good moral character; and (2) the Patels had obtained their permanent residence illegally.


II. Discussion

A. Standard of Review

1. Summary Judgment

As the Court considers matters outside of the pleadings, and has provided the parties a reasonable opportunity to present all pertinent material, it will treat the CIS's motion as one for summary judgment, to be disposed of under Rule 56.  Fed. R. Civ. P. 12(b).

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

3

y


*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Only "facts that might affect the outcome of the suit under the governing law" are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.  The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257.  The mere existence of a "scintilla" of evidence is insufficient.  *Id*. at 252.  If the nonmoving party fails to show an essential element of his case on which he will bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law.  *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P.

56(e).

2.  Court Review of Naturalization Applications

"The Congress shall have Power . . . To establish an uniform Rule of Naturalization . . . ."  U.S. Const. art I, § 8, cl. 4.  The task of the courts is to ensure "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship . . . to safeguard the integrity of this 'priceless treasure.'"  *Fedorenko v. United States*, 448 U.S. 490, 506-07 (1981) (*quoting Johnson v. Eisentrager*, 339 U.S. 763, 791 (1950) (Black, J., dissenting)).

Title 8 U.S.C. § 1421(c) provides the district court with legal and factual *de novo* review of denied naturalization applications:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5.  Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).  "[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect," and "doubts should be resolved in favor of the United States and against the claimant."  *Berenyi v. District Director, Immigration and Naturalization Service,* 385 U.S. 630, 637 (1967) (internal

quotation marks omitted).

B. Analysis

In support of its motion, the CIS argues that: (1) Harshad Kumar Patel failed to establish good moral character because he provided false testimony in order to gain an immigration benefit, his naturalization; and (2) the Patels were not lawfully admitted to the United States because Harshad Kumar Patel obtained his permanent residency by fraud.

The CIS's case against the Patels is founded on an unsigned "Report of Investigation" prepared on February 3, 2003 by CIS special agent Ramon O. Oyegbola recounting an October 20, 2002 interview with Jay Patel (the "ROI").  Resp't's Mot. Ex. 1 at 2-4.  The ROI alleges that Jay Patel stated that attorney Samuel Kooritzsky "told him that he could bring beneficiary [sic] into the United States by filing false labor certification [sic] and I-140 petitions."  *Id*. Ex. 1 at 2.  The ROI then states that "[Jay] Patel admitted to the agents that he have [sic] assisted 4 aliens to obtained [sic] lawful permanent residents [sic] through fraudulent approved labor certifications."  *Id*.  The ROI lists "Harshad Patel, born in India, age approximately in late 35s" as one of the four aliens Jay Patel assisted, and states that "[Jay] Patel admitted that he received $8,000.00 from alien to petition on his behalf when though [sic] that alien would not work for him

6

at Dunkin Donut [sic] nor any of his motel [sic]."  *Id.* Ex. 1 at 3.

1.  Good Moral Character

Title 8 U.S.C. § 1427(a) provides in part that:  "No person . . . shall be naturalized unless such applicant, . . . during all the periods referred to in this subsection has been and still is a person of good moral character . . . ."  Department of Homeland Security regulation 8 C.F.R. § 316.10 provides further guidance on the good-moral-character requirement.  The CIS is to "evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence."  8 C.F.R. § 316.10(a)(2).  The "applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character."  8 C.F.R. § 316.10(a)(1).  The regulation specifically indicates:

> An applicant shall be found to lack good moral character if during the statutory period the applicant: . . . Has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit.

8 C.F.R. § 316.10(b)(2)(vi).

The CIS alleges that Harshad Kumar Patel made four false statements on his Form N-400 and in his "Record of Sworn Statement: Good Moral Character" (the "Sworn Statement") that evidence his lack of good moral character.

On the affirmed Form N-400, Harshad Kumar Patel answered "No" to: (1) "Have you *ever* given false or misleading information to any U.S. government official while applying for an immigration benefit or to prevent deportation, exclusion, or removal?"; and (2) "Have you *ever* lied to any U.S. government official to gain entry or admission into the United States?" Resp't's Mot. Ex. 1 at 46.

On the Sworn Statement, Harshad Kumar Patel affirmed the following answers to questions posed by the ICS agent:

> Q: Did you ever work for Jay Patel at Dunkin Donuts in Camp Springs MD?
>
> A: Yes, I worked there from 1994-1999. I worked at the counter, office work and management.
>
> Q: Did you ever pay anyone money to gain illegal immigration documents?
>
> A: No.

Resp't's Mot. Ex. 1 at 50.[3]

The CIS argues that Harshad Kumar Patel's statements are false because they are contradicted by the ROI. Additionally,

---

[3] The Court notes that the Sworn Statement identifies the person supposedly answering these questions as "Fatima Mohammad." Resp't's Mot. Ex. 1 at 50.

8

the CIS argues that his statement that he worked for Jay Patel at the Dunkin' Donuts in Camp Springs from 1994 to 1999 is false because his Internal Revenue Service W-2 forms ("W-2s") from 1999 and 2000 show him working at Dunkin' Donuts locations in Crofton and Brooklyn Park, Maryland.  Compl. Ex. D.

 The Patels contend that summary judgment is inappropriate because there are many significant material facts in dispute. The Patels point out several problems with the evidentiary reliability of the ROI.  They argue that Patel is a very common Indian surname, and the assumption that the Harshad Patel mentioned in the ROI is Harshad Kumar Patel is not based on reliable identification evidence.  Whether the interviewee of the ROI is whom Harshad Kumar Patel believed to be his employer is questionable because the ROI mentions a second man named Jay Patel who also owns Dunkin' Donuts restaurants in the Washington Metropolitan area.  The ROI adds to the confusion by not mentioning the locations of all of the Dunkin' Donuts restaurants owned by the two Jay Patels.  The Patels further argue that there is nothing in the ROI that suggests Harshad Kumar Patel knowingly and intentionally attempted to fraudulently gain an immigration benefit.  At most, they allege, the ROI shows that the Patels were unwitting victims of a fraud by one of the Jay Patels.

 Harshad Kumar Patel states that he has worked at several different Dunkin' Donuts locations in Maryland from 1994 to 2000,

9

and that he had reasons to believe that a man named Jay Patel owned, or had a management interest in, all of those restaurants. Pet'r's Opp'n Ex. E (affidavit of Harshad Kumar Patel) ¶¶ 3-4. Harshad Kumar Patel also states that he paid a Jay Patel $8000 because he was led to believe that figure was the cost of the necessary attorney and immigration fees for the Patels' permanent residence applications. *Id*. ¶ 5. He further testifies that he never paid anyone for a fraudulent labor certification. *Id*.

2. Lawful Admission

Title 8 U.S.C. § 1429 provides in part that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429. "The burden of proof shall be upon such person to show that he entered the United States lawfully . . . ." *Id*.

The CIS argues that because Harshad Kumar Patel "obtained his permanent residency by fraud and willfully misrepresented the facts, he has not been lawfully admitted into the Untied States." Resp't's Mot. 10. The CIS further contends that because Mamta Patel's permanent residency was granted pursuant to her husband's status, Harshad Kumar Patel's unlawful admission would render hers unlawful as well.

The Patels contend that even if Harshad Kumar Patel's

10

employer and his employer's attorney were involved in filing fraudulent labor certifications, and prepared the Patels' applications for permanent residence, there is no evidence to support the inference that the particular labor certification filed for Harshad Kumar Patel was fraudulent, or that he committed fraud or willful misrepresentation in obtaining his permanent residency.  The Patels argue that, at a minimum, whether their applications were genuine and properly filed remains a genuine issue of material fact.

III.  Conclusion

    The Patels have presented sufficient evidence and raised considerable doubts about the reliability of the CIS's evidence for the Court to find that genuine factual issues remain for trail concerning whether: (1) Harshad Kumar Patel made false statements with an intent to gain an immigration benefit; and (2) whether the Patels were lawfully admitted to the United States for permanent residence.  Accordingly, the CIS's motion for summary judgment will be denied.


<u>April 2, 2007</u>                         <u>        /s/              </u>
Date                                William D. Quarles, Jr.
                                    United States District Judge